DAVID C. SVEDAHL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4030-85.          Filed August 10, 1987.

*Peter R. Stromer*, for the petitioner.
*Debra Estrem*, for the respondent.

SWIFT, *Judge*: In a timely statutory notice of deficiency, respondent determined a deficiency in petitioner's Federal income tax liability for 1983 in the amount of $2,824 and an addition to tax pursuant to section 6653(a)(1)[1] in the amount of $250.92. Respondent filed an amendment to his answer in which he increased the deficiency to $6,314 and increased the addition to tax to $316. Respondent also asserts an addition to tax under section 6653(a)(2) and requests damages be awarded to the United States under section 6673.

After concessions, the issues to be decided are whether petitioner is entitled to a charitable contribution deduction with respect to $10,000 he allegedly contributed to the Universal Life Church, Inc., of Modesto, California (ULC Modesto), and whether petitioner is entitled to deduct $10,000 in interest petitioner allegedly paid with respect to a personal loan. Also at issue is the applicability of the additions to tax and damages set forth above. Trial of this case was held on April 22, 1987, in San Francisco, California.

---

[1] All section references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner David C. Svedahl resided in Redwood City, California, at the time the petition was filed. Petitioner untimely filed an individual Federal income tax return for 1983. In 1983, petitioner was a full-time employee of United Air Lines, Inc., and earned an annual salary of $45,959.

Since 1970, petitioner has been affiliated with ULC Modesto. Beginning in 1979, petitioner operated a local chapter of ULC Modesto. On his 1979, 1980, and 1981, Federal income tax returns petitioner claimed charitable contribution deductions with respect to amounts paid to his local chapter of ULC Modesto. This Court disallowed those deductions in a bench opinion rendered February 13, 1985 (docket No. 25287-83), which opinion was affirmed without published opinion. *Svedahl v. Commissioner*, 811 F.2d 1509 (9th Cir. 1987).

On January 7, 1983, petitioner issued a personal check in the amount of $400 to a local chapter of ULC Modesto, located in Stockton, California (ULC Stockton). The founder of ULC Stockton was Mack J. Stone. Upon receipt of petitioner's $400 check, Mr. Stone issued a check in the amount of $400 in favor of petitioner on the account of ULC Stockton and gave it to petitioner. In prior years, petitioner and Mr. Stone had issued offsetting checks to each other's local ULC chapter and claimed charitable contributions with respect thereto.

In January of 1983, the officers of ULC Modesto revised its program for the receipt and disbursement of funds received from individuals as alleged charitable contributions. Previously, individuals made payments directly to local ULC chapters or to ULC Modesto in exchange for checks from ULC Modesto made out to the individual "contributors" or to their local chapters. These payments uniformly were disallowed as charitable contribution deductions by respondent and by the courts. Under the revised program, individuals were to send checks to ULC Modesto along with a form entitled "ULC Receipts and Disbursements Order" (disbursement order form). Individuals were to list on the disbursement order forms the amounts they owed on bills that purportedly related to the operation of

their local ULC chapters. These bills were, in fact, personal bills. Also to be listed on the disbursement order forms were the names of the creditors to whom the amounts shown on the bills were owed.

Upon receipt of checks and disbursement order forms, ULC Modesto would issue checks on its bank account in Modesto, California, payable not to the "contributors" or to local ULC chapters, but payable directly to the creditors specified on the disbursement order forms. ULC Modesto then would send the checks to the individuals from whom it had received the "contributions," and the individuals would forward the checks of ULC Modesto to their creditors. Apparently, individuals could submit to ULC Modesto "contributions" and disbursement order forms in this manner as often as they desired. ULC Modesto charged a service fee for each check it issued under this program. The amount of the service fee was 2 percent of the face amount of each check plus 50 cents for each check.

We quote from an article contained in a newsletter of ULC Modesto that described the revised program as follows:

### ULC RECEIPTS AND DISBURSEMENT PROGRAM

A long talked about and over due program for the Church has taken shape in the centralized Receipts and Disbursement Program for the congregation. This unique program offered by the Universal Life Church, Inc., International Headquarters, 601 Third St., Modesto, CA 95351 is designed for use by the congregation and is the ONLY officially recognized program of its kind by International Headquarters. Basically, the Universal Life Church, Inc., International Headquarters has started a congregation in your local area and this program simplifies the method used to receipt and disburse money needed for the local congregation.

We will accept money orders, cashier's checks, or personal checks as donations (personal checks require 14 days for clearing). If a personal check does not clear the bank the congregation will be inactivated until such time as the check is made good. This donation should be sent with a completed ULC Receipts and Disbursement order. On the reverse of this form a sample order form is provided. Please print clearly when completing the form. PLEASE KEEP A COPY OF THE COMPLETED ORDER FORM FOR YOUR RECORDS.

THERE IS A SMALL SERVICE CHARGE for this program which is $.50 for each check we must write plus a flat fee of 2% of the total amount disbursed. This donation is necessary to keep the program viable. Thus, if on the reverse side of this form, you have 4 bills to be paid, totaling $500.00, you would send

$500.00      (total amount disbursed)
+    2.00      (total of $.50 per check)
+   10.00      (2% of $500.00)
$512.00      (total amount you send).

Legitimate expenses for the congregation would include monthly bookkeeping fees paid to International Headquarters, rent or mortgage payments on the congregational meeting place, rent or mortgage payments for the Pastor's living quarters, utilities for the congregational meeting place and/or Pastor's living quarters, telephone expenses used solely by the congregation, automobile expenses incurred by the Pastor for the performance of his sacerdotal duties, educational expenses, etc. If for some reason the bill to be paid by International Headquarters might be questioned as a legitimate expense we will notify you immediately.

Once checks are written by International Headquarters for the bills to be paid out of the ULC Receipts and Disbursement program the congregation will then need to forward the checks on to the appropriate organizations. The computerized checks will contain (on the voucher stub) the congregation balances and other pertinent information that the congregation should retain in their files. Please detach the voucher stub before mailing to the creditors.

By using the Receipts and Disbursements Program we can positively prove that you did indeed donate directly to International Headquarters, Universal Life Church, Inc., 601 Third Street, Modesto, California 95351. Please retain your individual receipts.

Please understand the theory behind this whole program. It is to show that the Church has complete control over all funds contributed by its members and that you do not have a church. You are authorized to Pastor a congregation of the Universal Life Church, Inc., International Headquarters. Thus, International Headquarters does have control of the monetary situation of this congregation and does dictate theological teachings ("to do that which is right.")

The sample of the disbursement order form set forth in the newsletter appears as follows:

ULC RECEIPTS AND DISBURSEMENT ORDER

NAME _____ CONGREGATION # _____ DATE _____
ADDRESS _____ CITY_____ ST _____ ZIP_____

BILLS TO BE PAID

| Check #<br>(office use) | PAYEE (Please print clearly) | AMOUNT |
|---|---|---|
| _____ | 1. _____ | _____ |
| _____ | 2. _____ | _____ |
| _____ | 3. _____ | _____ |

| Check #<br>(office use) | PAYEE (Please print clearly) | AMOUNT |
|---|---|---|
| _____ | 4. _____ | _____ |
| _____ | 5. _____ | _____ |
| _____ | 6. _____ | _____ |
| _____ | 7. _____ | _____ |
| _____ | 8. _____ | _____ |
| _____ | 9. _____ | _____ |
| _____ | 10. _____ | _____ |
| _____ | 11. _____ | _____ |
| _____ | 12. _____ | _____ |
| _____ | 13. _____ | _____ |
| _____ | 14. _____ | _____ |
| _____ | 15. _____ | _____ |
| _____ | 16. _____ | _____ |
| _____ | 17. _____ | _____ |
| _____ | 18. _____ | _____ |
| _____ | 19. _____ | _____ |
| _____ | 20. _____ | _____ |

COMMENTS:

TOTAL   $_____

On or about December 28, 1983, petitioner mailed a check in the amount of $10,000 drawn on his personal checking account to ULC Modesto. The check was submitted to ULC Modesto under its revised receipts and disbursements program. The check was endorsed by ULC Modesto and deposited on January 9, 1984, into its account at Crocker National Bank, Modesto, California.

The record does not contain a disbursement order form associated with petitioner's $10,000 payment to ULC Modesto. At petitioner's request, however, in January of 1984, ULC Modesto issued checks payable to at least two of petitioner's creditors. ULC Modesto issued a check in the amount of $402.05 payable to the mortgagee of the loan on petitioner's residence. ULC Modesto also issued a check in

the amount of $328.20 payable to petitioner's automobile insurance company for the semiannual insurance premium due on petitioner's automobile. ULC Modesto sent both checks to petitioner. Petitioner forwarded the $402.05 check to his mortgagee, but petitioner returned to ULC Modesto the $328.20 check because ULC Modesto had delayed sending the check, and petitioner already had paid his insurance premium.

On his Federal income tax return for 1983, petitioner deducted a charitable contribution of $10,400 for amounts he allegedly contributed during that year to ULC Modesto. Of this amount, petitioner concedes that he is not entitled to deduct the $400 he paid to ULC Stockton.

Petitioner also deducted on his 1983 Federal income tax return $10,000 in interest expense with respect to a purported personal loan. The record fails to establish the amount or existence of any such loan, or the payment by petitioner of any interest thereon.

In his notice of deficiency, respondent disallowed the claimed charitable contribution deduction in the amount of $10,400, and respondent raised by amendment to his answer the disallowance of the $10,000 interest expense claimed by petitioner.

## OPINION

Section 170[2] generally allows deductions for charitable contributions where taxpayers can prove that contributions

[2]Sec. 170 provides in relevant part—

SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

(a) ALLOWANCE OF DEDUCTION.—

(1) GENERAL RULE.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) A corporation, trust, or community chest, fund, or foundation—

(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes \* \* \*;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual;

actually were made to a qualified tax-exempt organization and that no part of the net earnings of the qualified tax-exempt organization inured to the taxpayer's personal benefit. *Kalgaard v. Commissioner*, 764 F.2d 1322, 1323 (9th Cir. 1985), affg. a Memorandum Opinion of this Court; *Davis v. Commissioner*, 81 T.C. 806, 817 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985); *Miedaner v. Commissioner*, 81 T.C. 272, 281 (1983). Where alleged charitable contributions are made with the expectation of receiving personal economic benefit in return for the contributions, they do not qualify as true charitable contributions for Federal income tax purposes. *Hansen v. Commissioner*, 820 F.2d 1464 (9th Cir. 1987), affg. an unreported order of this Court; *Collman v. Commissioner*, 511 F.2d 1263, 1267 (9th Cir. 1975), affg. a Memorandum Opinion of this Court; *Wedvik v. Commissioner*, 87 T.C. 1458, 1465 (1986); *DeJong v. Commissioner*, 36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962).

The parties agree solely for purposes of this case that during 1983 ULC Modesto was a qualified tax-exempt organization pursuant to section 501(c)(3).[3] The dispute herein concerns whether petitioner made charitable contributions to ULC Modesto and whether any part of the net earnings of ULC Modesto inured to his personal benefit. Petitioner argues that he is entitled to a charitable contribution deduction because he made an actual payment of $10,000 to ULC Modesto, which in 1983 was a qualified tax-exempt donee organization. Respondent argues that the deduction is not allowable because of the substantial personal benefits petitioner expected in return for the $10,000 payment.

Petitioner made the alleged contribution to ULC Modesto pursuant to its revised receipts and disbursements program under which alleged contributions to ULC Modesto would be returned to petitioner to fund payment of his personal expenses. Amounts contributed under that program were made with the expectation of receiving substantial economic benefit and therefore do not qualify as deductible charitable contributions. In *Wedvik v. Commissioner*, 87 T.C. 1458

---

[3]We note that the Internal Revenue Service revoked the tax-exempt status of ULC Modesto on Sept. 4, 1984. Announcement 84-90, 1984-36 I.R.B. 32 (1984).

(1986), we considered the deductibility of "contributions" to ULC Modesto pursuant to an arrangement under which checks of ULC Modesto offsetting the "contributions" were made payable directly to the taxpayers. With respect to that arrangement, we concluded that the taxpayers—

did not relinquish dominion and control over their alleged charitable contributions and that petitioners expected and received a substantial quid pro quo for the alleged contributions * * * [and] that they did not make any contributions. * * * [*Wedvik v. Commissioner, supra* at 1467. Citations omitted.]

Petitioner's argument that the funds he received from ULC Modesto constituted payment by ULC Modesto of only ordinary church expenses and not personal expenses is completely unsupported by the record herein and also is controverted by the numerous cases that have rejected claims that expenses of operating local chapters of ULC Modesto are deductible. See, e.g., *Kalgaard v. Commissioner; supra*, and *Miedaner v. Commissioner, supra*. In this regard, we have held that the exemption for ULC Modesto does not constitute a group exemption for local ULC chapters. *Davis v. Commissioner, supra* at 815. Accordingly, the precedential authority disallowing alleged contributions to local ULC chapters controls the instant case in which funds simply were transferred by petitioner to ULC Modesto pursuant to a prearranged plan under which the funds were to be returned to petitioner and used to pay personal expenses.

The temporary control by ULC Modesto of funds paid to it under the revised receipts and disbursements program does not convert the funds into contributions to ULC Modesto. We previously have noted the lack of control exercised by ULC Modesto over the expenses paid by local ULC chapters, as evidenced by the testimony of Kirby J. Hensley, president of ULC Modesto, as follows:

Hensley also testified that ULC Modesto left it up to local congregations or chapters to determine the manner in which funds would be raised and spent, "as long as it's done for the right thing," and under the church's doctrine, as described by Hensley, each member determines for himself or herself what is "right." * * * [*Davis v. Commissioner, supra* at 816.]

Under the revised receipts and disbursements program, a change did occur in the flow of funds used to pay purported expenses of local ULC chapters and in the payees designated on the checks of ULC Modesto. There is no credible evidence, however, that ULC Modesto altered its policy of allowing members of local ULC chapters to spend funds they received in any way they deemed "right."[4]

The revised receipts and disbursements program may have been "long talked about and overdue" from the standpoint of officers of ULC Modesto and "designed to show that the Church has complete control over" funds contributed under the program. In our opinion, however, the program was a sham and had no purpose other than to mask the true character of personal, nondeductible expenses.

In light of the evidence concerning petitioner's lack of credibility and tax-avoidance motives, as well as the evidence concerning the prearranged swapping of funds under ULC Modesto's revised receipts and disbursements program (not dissimilar from the swapping of funds between petitioner and ULC Stockton and effectively the same as the receipts and disbursements program addressed in *Wedvik v. Commissioner, supra*), it is clear that petitioner made the $10,000 payment to ULC Modesto with the intent and purpose of receiving $10,000 from ULC Modesto to pay personal bills (minus ULC Modesto's fee for participating in the arrangement).

Respondent also argues that the alleged charitable contributions are not allowable because the receipt by petitioner of $402.05 for his mortgage payment constituted a prohibited private inurement of a portion of the net earnings of ULC Modesto. Respondent further argues that petitioner has failed to prove that the balance of the $10,000 alleged contribution was not also returned to petitioner for the payment of personal expenses. With regard to whether any of petitioner's personal expenses in addition to the one mortgage payment actually were paid by ULC Modesto, petitioner testified vaguely as follows:

---

[4]ULC Modesto allegedly could veto suggested payments. The only bills that were to be paid, however, were those suggested by individual "contributors."

Q. Did you designate any other expenses of your local congregation that you'd like the church to pay?

A. I'll have to admit I really don't know.

Petitioner argues that the payment by ULC Modesto of the mortgage on his personal residence constitutes a parsonage allowance under section 107,[5] not a prohibited private inurement. The parsonage allowance, however, provides an exclusion from gross income. The mortgage payment by ULC Modesto in the amount of $402.05 was never included in petitioner's gross income and, therefore, among other reasons, does not qualify as a parsonage allowance. In light of the evidence herein, petitioner has completely failed to establish that he did not receive an impermissible private inurement of a portion of the net earnings of ULC Modesto.

Turning to the $10,000 claimed interest expense deduction, section 163[6] allows a deduction for interest only where interest was paid or incurred on genuine indebtedness of the taxpayer. *Estate of Franklin v. Commissioner*, 64 T.C. 752, 761 (1975), affd. 544 F.2d 1045 (9th Cir. 1976). With respect to this deduction, petitioner has failed to establish the existence of any loan, the terms of any loan agreement, or that any interest actually was paid by him with respect to the purported loan.

Petitioner's testimony with respect to the purported loan is vague and contradictory. Petitioner testified that he acquired the $100,000 loan from a complete stranger while in a nightclub in Rio de Janeiro, Brazil. The stranger allegedly gave petitioner $100,000 in gold (South African Krugerrands) without obtaining any written evidence thereof from petitioner. Petitioner cannot remember when the alleged loan was acquired, and only guessed that it was acquired in 1981 or 1982. This testimony conflicts with petitioner's conduct in claiming an interest expense deduc-

---

[5]Sec. 107 provides—

SEC. 107. RENTAL VALUE OF PARSONAGES.

In the case of a minister of the gospel, gross income does not include—

(1) the rental value of a home furnished to him as part of his compensation; or

(2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.

[6]Sec. 163(a) provides—

SEC. 163. INTEREST.

(a) GENERAL RULE.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

tion with respect to this same purported loan in the amount of $10,000 on his 1979 tax return. We sustain respondent on this issue.

Respondent determined additions to tax for negligence under section 6653(a)(1) and (a)(2). Respondent's determination of negligence is presumptively correct and will be upheld unless petitioner rebuts that presumption. *Larsen v. Commissioner*, 765 F.2d 939, 941 (9th Cir. 1985), affg. an order of this Court; *Hall v. Commissioner*, 729 F.2d 632, 635 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. Petitioner argues that because this case raises new theories concerning alleged contributions to ULC Modesto, the additions to tax should not be sustained. We disagree.

In recent years, Federal courts have been deluged with litigation (both criminal and civil) concerning abuses of the charitable contribution deduction by individuals affiliated with ULC Modesto.[7] Petitioner, himself, recently has litigated the deductibility of such alleged contributions. The receipts and disbursements program of ULC Modesto under which petitioner seeks to justify the deductions in question is as flagrant, abusive, and obviously unjustified as other schemes used by ULC Modesto and its local chapters to obtain tax deductions for personal living expenses. We sustain respondent's determinations of the additions to tax.

The final issue for decision is whether damages should be awarded to the United States pursuant to section 6673.[8] That section provides for damages to be awarded to the United States whenever it appears that a taxpayer has filed or maintained a petition in this Court primarily for delay or

---

[7]In addition to the cases already cited herein, see, e.g., *United States v. Heinemann*, 801 F.2d 86 (2d Cir. 1986) (conviction of conspiracy in the operation of a pyramid scheme to sell ULC ministries); *United States v. Adu*, 770 F.2d 1511 (9th Cir. 1985), and *United States v. Gleason*, 766 F.2d 1239 (8th Cir. 1985) (convictions for assisting in the preparation of fraudulent tax returns by providing individuals false receipts for alleged contributions to local ULC chapters); *Universal Life Church, Inc. v. United States*, 9 Cl. Ct. 614, 617 n. 2 (1986) (citing numerous cases disallowing "contributions" to local chapters of ULC Modesto).

[8]Sec. 6673 provides:

SEC. 6673. DAMAGES ASSESSABLE FOR INSTITUTING PROCEEDINGS BEFORE THE TAX COURT PRIMARILY FOR DELAY, ETC.

Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.

where a taxpayer's position in a proceeding in this Court is frivolous or groundless.

As stated, petitioner has been affiliated with ULC Modesto since 1970. Petitioner was well informed of the rules and regulations regarding the deductibility of charitable contributions pursuant to section 170, and of interest payments pursuant to section 163, as evidenced by his prior litigation of these same issues in this Court. In that litigation, damages against petitioner in favor of the United States were awarded under section 6673 in the amount of $5,000.[9]

Petitioner has been warned that deductions claimed with respect to alleged contributions to ULC Modesto and its local chapters consistently have been disallowed and that damages have been awarded in many of those cases. Petitioner's position in this case is entirely without merit. The maintenance of this case in the face of overwhelming contrary authority and repeated warnings by respondent compels the conclusion that this case was maintained primarily for delay. We award damages to the United States under the authority of section 6673 in the amount of $5,000.

*Decision will be entered for the respondent.*

---

[9]On appeal, the Ninth Circuit affirmed the Tax Court's award to the United States of $5,000 in damages under sec. 6673 and awarded the Government additional damages in the amount of $1,000 pursuant to F. R. App. P. 38. *Svedahl v. Commissioner*, 811 F.2d 1509 (9th Cir. 1987).