JAMES EDWARD DEW, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 16143-84.      Filed September 14, 1988.

James Edward Dew, pro se.
*Martin F. Klotz,* for the respondent.

PARKER, *Judge:* Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows:

| Year | Deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6653(a) or 6653(a)(1) [1] | Sec. 6653(a)(2) |
| 1980 | $3,467.98 | $173.40 | - - - |
| 1981 | 5,721.00 | 286.05 | 50 percent of interest due on $5,721 |

After concessions by petitioner, the issues remaining for decision are:

(1) Whether petitioner is entitled to deductions for charitable contributions to Charter No. 21686 of the Universal Life Church;

(2) Whether petitioner is liable for additions to tax for negligence or intentional disregard of rules and regulations under section 6653; and

(3) Whether petitioner is liable for damages under section 6673.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.

Petitioner lived in San Diego, California at the time he filed his petition in this case. Petitioner timely filed his 1980 and 1981 Federal income tax returns (Forms 1040) with the Internal Revenue Service Center in Fresno, California.

Petitioner has a bachelor's degree and a master's degree from National University in San Diego, California. During the years in issue, petitioner received retirement pay from the U.S. Government and also worked full-time for Computer Sciences Corp. of San Diego, California, as a computer analyst. In 1980 and 1981, Computer Sciences Corp. paid petitioner $18,507.62 and $20,757.76, respectively.

On March 31, 1979, petitioner had obtained from the Universal Life Church, Inc., of Modesto, California (hereinafter ULC Modesto), a charter for a local chapter or church, Charter No. 21686 (hereinafter ULC No. 21686). During 1980 and 1981, petitioner was at all times the president of ULC No. 21686.[2] During those years some of his friends or coworkers from Computer Sciences Corp. served along with him as members of a board of directors and held other offices. Monroe W. Barker (Barker) was a director and treasurer in 1980, and after his death, Darrell E. Schultz (Schultz) became a director and treasurer in 1981; John T. Flattery (Flattery) was a director and secretary for both years. ULC No. 21686 had a bank account with California First Bank, account No. 0101399442 (hereinafter ULC No. 21686 bank account), on which petitioner, Barker or Schultz, and Flattery were the sole signatories. During the years before the Court, they each signed checks on the ULC No. 21686 bank account to pay each other's rent or mortgage payments and other personal expenses. Petitioner and each of the other officers and directors routinely submitted a list of personal expenses to be paid from the ULC No. 21686 bank account, and then one of the other

---

[2] The exact nature of this entity is not disclosed by the record. It was not a corporation. Petitioner claimed ULC No. 21686 was a trust, but produced no documentation in support of his assertion. Petitioner and other "directors" of ULC No. 21686 refused to comply with this Court's subpoenas to produce articles of incorporation, bylaws, bank and other records, and a register of ULC No. 21686 members. See note 6, *infra.* Based on the record as a whole, ULC No. 21686 appears to have been nothing more than a group of persons with a computer and a bank account. Possibly this group could be deemed to be an association or informal partnership. However, to the extent, if any, that the exact nature of the organization is relevant or material to any issue in the case, petitioner has simply failed to carry his burden of proof in that regard. Rules 142(a), 149(b).

officers and directors signed the checks for that purpose. Ultimately, the ULC No. 21686 bank account was used to pay the rent or mortgage payments and other personal expenses of some 25 "ministers." Payment of these expenses of the "ministers" appears to have been the principal activity in this bank account and the principal activity of ULC No. 21686.[3]

ULC No. 21686 did not have a building or any other regular meeting place, and any meetings that were held took place in restaurants, parks, or private residences. ULC No. 21686 did not have a telephone listing. ULC No. 21686 did not have any employees. However, ULC No. 21686 had some 45 to 48 members of whom at least 25, and possibly as many as two-thirds, were "ministers," who were "ordained" by mail by ULC Modesto or "ordained" by petitioner, himself, or by other members of ULC No. 21686.

Petitioner received his ordination by mail from ULC Modesto. He did not undertake any course of theological training or study to be ordained and did not take part in any ordination ceremony. Karen Bryan, another "minister" of ULC No. 21686, also had no prior theological training or study, and her ordination consisted of nothing more than her husband's handing her a card certifying that she was a ULC minister. Joseph Furfuro, another "minister" of ULC No. 21686 who had had some religious training as a youth when he attended a Catholic elementary school, underwent no theological training or study and was ordained by ULC Modesto by mail. Flattery, one of the directors and officers of ULC No. 21686, also received his ministerial credentials by mail from ULC Modesto, also without any theological

---

[3]Petitioner testified in vague general terms about purported charitable activities of ULC No. 21686, including purported cash contributions to charities, helping a family made homeless by a fire, a Christmas party for the elderly, and outings for a group of Indian children. The Court did not find his testimony particularly believable. If these activities occurred at all, we think such activities were simply undertaken by the various individuals and were not organized activities of ULC No. 21686. For example, Joseph Furfuro testified that he performed no services for ULC No. 21686, but that in addition to his full-time employment with Computer Sciences Corp., he also performed volunteer work at a community hospital, and he opined that it was for this community work that ULC No. 21686 paid part of his personal living expenses. Petitioner also claimed that he performed marriages but he offered no documentary proof to substantiate that claim. Another "minister," Schultz, testified that he performed marriages for which either he or ULC No. 21686 received payments, but he could not recall if he reported any of that income on his tax return. The Court found the testimony of petitioner and the other "ministers" to be evasive and generally unworthy of belief in regard to the purported charitable activities of ULC No. 21686.

training or study. Schultz, another director and officer of ULC No. 21686, likewise received his ordination without any theological training or study, and he was apparently "ordained" by petitioner.

In 1980 and 1981, Karen Bryan was employed full-time by Hartford Insurance Co.. She could not recall ever performing any services for ULC No. 21686. In 1980, she received checks made payable to her from the ULC No. 21686 bank account in the amounts of $976, $3,000, $400, $300, and $300. Those checks, made payable to Karen Bryan, totaling $4,976, were either cashed by her or deposited into her bank account. In 1981, she received checks made payable to her from the ULC No. 21686 bank account in the amounts of $3,000, $500, $500, $300, and $400. These checks made payable to her totaling $4,700 were either cashed by her or deposited into her bank account. She could not explain why ULC No. 21686 made payments to her other than to suggest that it had something to do with her husband, who was one of petitioner's friends and coworkers at Computer Sciences Corp. While the record is not entirely clear, apparently her husband made "contributions" to ULC No. 21686 which were deducted on their tax returns those years.

Furfuro, another mail-order ULC minister, was a full-time employee of Computer Sciences Corp. and had no other employment in 1980 and 1981. He was a college graduate with a master's degree in business and a master's degree in computer science. In 1980 and 1981, he made "contributions" to ULC No. 21686 which he deducted on his tax returns. During those years, the ULC No. 21686 bank account was used to pay his telephone bills, his utility bills, and other expenses that he had listed. He also received from that bank account checks made payable to him in the amounts of $1,976, $1,976, $500, and $700, for a total of $5,152 in 1980. In 1981, he also received at least three such checks for $231 or $232, each, and also had some of his personal expenses paid by that bank account. His only explanation for those checks and those payments was that he was being paid for his "volunteer" services at the community hospital.

Flattery, the secretary and director of ULC No. 21686 and also a "mail-order minister," had formerly worked with petitioner, but in 1980 and 1981, was employed full time by Litton Industries. He had no other employment during those years. Flattery had a degree from San Diego State University in mathematics with an emphasis in computer science. He made "contributions" to ULC No. 21686 of $6,000 to $7,000, which he deducted on his tax returns in 1980 and 1981. In 1980, he received at least two checks from the ULC No. 21686 bank account payable to him, signed by petitioner or Barker, and in the amounts of $500 and $4,400. He endorsed the checks and assumed they were for his expenses and food. In 1981, Flattery received checks payable to him, signed by Schultz, and in the amounts of $5,100 and $3,976. He did not reduce his charitable contributions deduction by the amounts paid to him by ULC No. 21686. Flattery also occasionally signed checks on the ULC No. 21686 bank account for payment of the living expenses of other "ministers" of ULC No. 21686, it being the practice that whichever one of the bank signatories was handy would sign the checks for the other "ministers."

In 1980 and 1981, Schultz was employed full-time by Computer Science Corp. He was another "minister" of ULC No. 21686, but he received no salary from ULC No. 21686, other than any payments he may have received for performing marriages. See note 3, *supra.* Schultz received his bachelor's degree from Pullman College in San Diego, California, in computer science in 1981. That year he was also the treasurer of ULC No. 21686 after Barker's death and had in his home a computer that purportedly belonged to ULC No. 21686.[4] In 1980 and 1981, he made "contributions" to ULC No. 21686 which he deducted on his tax returns, but he could not recall the amounts. In 1980 and 1981, he received checks on the ULC No. 21686 bank account payable to him, and that account was also used to pay certain of his housing and other personal expenses. In 1980, he received such checks made out to him in the amounts of $385, $200, $200, $500, and $400, totaling

---

[4]That computer was still in his home at the time of the trial. The Court is not persuaded that the computer belonged to ULC No. 21686, but on this record cannot determine whether Schultz or someone else owned the computer. See note 2, *supra.*

$1,685. These checks were signed by Barker, Flattery, or petitioner.

During 1980 and 1981, petitioner wrote checks on his personal bank account payable to "Universal Life Church" or "U.L.C.," which checks were marked "contributions" and deposited into the ULC No. 21686 bank account. Such checks for 1980 totaled $11,805. During the year 1980, petitioner received checks from the ULC No. 21686 bank account payable to him personally in the amount of $6,680.34. Checks on the ULC No. 21686 bank account were also used in 1980 and 1981 to pay petitioner's rent at Linda Vista Village, where he lived, and to pay other personal expenses. In 1981, petitioner wrote checks on his personal bank account payable to "Universal Life Church" or "U.L.C.," which checks were deposited into the ULC No. 21686 bank account and totaled $14,724. While the total amount petitioner received back from the ULC No. 21686 bank account in 1981 is not entirely clear, he received at least $4,162.27 in checks made payable to him and had numerous checks written on that account to third persons to pay his personal expenses.

Petitioner and the other signatories on the ULC No. 21686 bank account each wrote checks on that account in at least the following total amounts, most, if not all, of which were used to pay rent or mortgage payments and other personal expenses of each other and of other "ministers" of ULC No. 21686 or wrote checks directly payable to each other or to other "ministers" of ULC No. 21686:

| Signatory | Year | Total amount of such checks |
|---|---|---|
| Barker | 1980 | $55,081.28 |
| Flattery | 1980 and 1981 | 2,355.59 |
| Schultz | 1981 | 106,919.09 |
| Petitioner | 1980 | 7,977.00 |
| | 1981 | 14,744.91 |

On his tax returns for 1980 and 1981, petitioner deducted $11,048 and $14,835, respectively, as charitable contributions to the Universal Life Church, which respondent disallowed on audit.[5] This lawsuit ensued.

---

[5]In 1980, petitioner also deducted $950 as a contribution to an unidentified church. That amount was disallowed for lack of substantiation. There is no evidence in the record as to that

Before the trial, respondent's counsel brought to petitioner's attention and furnished him with a copy of this Court's opinion in *Davis v. Commissioner,* 81 T.C. 806 (1983), affd. in an unpublished opinion 767 F.2d 931 (9th Cir. 1985), involving deductions for claimed charitable contributions to a taxpayer's local chapter or local charter of the Universal Life Church. The Court also brought that case to petitioner's attention. Petitioner was warned by respondent's counsel that his position was frivolous or groundless and that if he pursued his contentions, respondent would seek damages under section 6673. Respondent has orally moved the Court to impose such damages.

## OPINION

This case presents a perfidious twist to the usual Universal Life Church (ULC) case. This case involves one local chapter or "church" of some 45 to 48 members, some 25 or possibly as many as two-thirds of whom are mail-order ULC "ministers" for whom the "church" pays rent or mortgage payments and other personal expenses.

Petitioner, a well-educated computer analyst with Computer Sciences Corp. of San Diego, California, obtained from ULC Modesto a charter for a local chapter or church (ULC No. 21686). Petitioner and some of his present or former coworkers from Computer Sciences Corp. served as a board of directors of this rather informal group (see note 2, *supra),* opening a bank account for ULC No. 21686 on which they were the sole signatories. Then, these signatories and other coworkers and friends "contributed" portions of their wages to ULC No. 21686 which were deposited into that bank account and claimed on their tax returns as charitable deductions. ULC No. 21686 then paid their rent or mortgage payments and other personal expenses or wrote checks directly to them from that bank account. ULC Modesto, petitioner, or other mail-order "ministers" then "ordained" many of petitioner's friends or coworkers, with the result that this "church" of some 45 to 48 members that had no building or other regular meeting place, no telephone, and no employees had at least 25 mail-order "ministers" for

disallowed amount, and petitioner has either abandoned his claim in that regard or has failed to carry his burden of proof. Rules 142(a), 149(b); *Welch v. Helvering,* 290 U.S. 111, 115 (1933).

whom it paid "parsonage allowances" and other personal living expenses. While the full extent of this daisy-chain or circular flow of moneys is not disclosed by the record in this case, respondent painstakingly proved the broad outlines of this brazen scheme.[6]

Deductions are a matter of legislative grace and a taxpayer must satisfy the specific statutory requirements of the deductions he claims. *Deputy v. du Pont*, 308 U.S. 488 (1940); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435 (1934). A taxpayer bears the burden of proving his entitlement to the deductions he claims. *Welch v. Helvering*, 292 U.S. 111 (1933); Rule 142(a). "These rules apply with equal force to deductions claimed for charitable contributions." *Davis v. Commissioner*, 81 T.C. 806, 815 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985).

For a charitable contributions deduction under section 170, petitioner must establish that he made a "charitable contribution" or "gift" to a qualified entity organized and operated exclusively for the exempt purpose no part of the net earnings of which inures to the benefit of any private individual. In view of the control petitioner retained and exercised over the funds "contributed" to ULC No. 21686, he cannot show that he has made any "gift" or "charitable contribution." *Burwell v. Commissioner*, 89 T.C. 580, 589-590 (1987), appeal dismissed (9th Cir., May 4, 1988); *Davis v. Commissioner, supra.* Moreover, since petitioner has failed and refused to produce any records in regard to the organization and operation of ULC No. 21686, he has failed to sustain his burden of proof as to these two

---

[6]Petitioner and the other members of the board of directors of the informal group failed to comply with this Court's subpoenas to produce the records, arguing that there is but one ULC church, i.e., ULC Modesto (an argument long rejected by this and other courts), that the records belong to ULC Modesto, and that Bishop Imbeau of ULC Modesto directed them not to produce the records. See note 2, *supra.* Nonetheless, based on the canceled checks and bank statements for the bank account for ULC No. 21686 and sworn testimony by some of the participants in this daisy chain, respondent established a compelling case. What the record in this case does not reveal is how much each person "contributed" to the bank account and deducted on his or her tax return compared to how much each person received back from that bank account. Tracking this circular money flow no doubt explains why there was a computer that the treasurer kept in his home. See notes 2 & 4, *supra.* If those computer records and other records disclosed a close correlation between the amount "contributed" and deducted on the tax return and the amount actually returned to that individual from the bank account, that might well suggest that this scam went beyond dubious tax avoidance and possibly verged on tax fraud or criminal conspiracy to evade taxes. See *Wedvik v. Commissioner*, 87 T.C. 1458 (1986), and *Svedahl v. Commissioner*, 89 T.C. 245, 255 and cases cited thereat in n. 7 (1987), involving other fraudulent ULC check-swapping schemes.

separate and essential tests for deductibility. See notes 2 & 6, *supra.* Furthermore, the record as a whole shows that this entity was nothing more than an informal group of friends and coworkers, who with a computer and a bank account simply exchanged checks in a transparent ploy to transmute their nondeductible personal, family, and living expenses into purported deductible charitable contributions.

Instead of trying to prove that there existed an entity organized and operated for an exempt purpose, petitioner trotted out the old shop-worn argument that there is only one Universal Life Church and that ULC No. 21686 is part of ULC Modesto and thereby entitled to the benefits of the tax-exempt status ULC Modesto still enjoyed at that time.[7] This Court and the Ninth Circuit to which any appeal in this case will lie have long since rejected that argument. *Rager v. Commissioner,* 775 F.2d 1081, 1082 (9th Cir. 1985), affg. a Memorandum Opinion of this Court; *Kalgaard v. Commissioner,* 764 F.2d 1322, 1323 (9th Cir. 1985), affg. a Memorandum Opinion of this Court; *Hall v. Commissioner,* 729 F.2d 632, 634 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; *Burwell v. Commissioner, supra,* 89 T.C. at 592-594; *Davis v. Commissioner, supra,* 81 T.C. at 815.

Lastly, however, petitioner fails on the inurement test. This case presents as blatant an example of inurement as this Court has encountered in the innumerable ULC scams and check-swapping schemes it has been called upon to rule on. *Svedahl v. Commissioner,* 89 T.C. 245 (1987), appeal dismissed (9th Cir., Jun. 24, 1988); *Wedvik v. Commissioner,* 87 T.C. 1458 (1986); see also cases cited in note 9, *infra.* This daisy chain, circular movement of moneys from the "ministers" to the ULC No. 21686 bank account and then back to the "ministers" (directly by checks payable to them or indirectly by personal expenses paid for them out

---

[7]During 1980 and 1981, ULC Modesto was listed as an organization exempt from tax under the provisions of sec. 501(c)(3). The Internal Revenue Service subsequently revoked its determination of tax exemption in 1984, and ULC Modesto filed an action for declaratory relief in the U.S. Claims Court. The Claims Court upheld the revocation, holding that ULC Modesto was not operated exclusively for exempt purposes. *Universal Life Church, Inc. v. United States,* 13 Cl. Ct. 567 (1987), on appeal (Fed. Cir., Jan. 28, 1988). Whether or not that revocation is ultimately upheld, prospectively or retroactively, will not aid petitioner in this case since it is entirely clear that petitioner did not make any of the "contributions" here in dispute to ULC Modesto, but instead deposited those amounts into the ULC No. 21686 bank account over which he had signatory power.

of that account) seems to have been the principal if not the sole activity of ULC No. 21686. This is proscribed inurement pure and simple. *Smith v. Commissioner,* 800 F.2d 930 (9th Cir. 1986), affg. a Memorandum Opinion of this Court; *Burwell v. Commissioner, supra,* 89 T.C. at 591-592.

On each and every ground discussed above, petitioner has failed to establish his entitlement to the charitable contributions deductions he claims.

The next issue is whether petitioner is liable for additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a). Petitioner bears the burden of proof and has failed to carry his burden. *Bixby v. Commissioner,* 58 T.C. 757, 791-792 (1972); *Enoch v. Commissioner,* 57 T.C. 781, 802-803 (1972).

Petitioner is a well-educated person, yet he has presented no plausible explanation for claiming charitable contributions deductions for his check-swapping arrangement with his friends and coworkers. Petitioner's only argument was that there was only one Universal Life Church and ULC No. 21686 was part of it. What petitioner and his fellow "ministers" of ULC No. 21686 engaged in could not possibly be viewed by any reasonable person as a charitable contribution to ULC Modesto. The negligence addition is clearly warranted in this case, and we sustain respondent's determination.

The final issue is whether or not damages should be awarded to the United States under section 6673. That section provides that whenever it appears to the Tax Court that proceedings "have been instituted or maintained by the taxpayer primarily for delay, that the taxpayer's position in such proceedings is frivolous or groundless," the Court may award damages to the United States in an amount not in excess of $5,000. The arguments made by petitioner have been rejected by this and other courts in cases too numerous to catalog,[8] and such arguments are legally "frivolous or groundless" within the meaning of section 6673.

---

[8] In addition to the many cases cited both in the text and footnotes to this opinion, see *Brown v. Commissioner,* T.C. Memo. 1986-268, where Judge Raum collated many of the ULC cases "too numerous for comprehensive cataloguing" but still listing "an impressive line of cases."

Moreover, here petitioner was given a copy of this Court's opinion in *Davis v. Commissioner, supra,* before the trial, had read that opinion before the trial, and had that opinion explained to him by both respondent's counsel and this Court. Respondent's counsel warned petitioner before the trial that if he persisted in these long-rejected arguments that damages would be sought under section 6673. At trial, respondent's counsel orally moved for award of damages.

Since petitioner's position is clearly frivolous or groundless and since petitioner, despite being told that fact, nonetheless persisted in pursuing this case, it seems inescapable that petitioner also instituted or at least maintained the proceedings primarily for delay. On either or both grounds, this is a proper case for imposition of damages.

Petitioner is a well-educated person working as a computer analyst. There is no reason to excuse petitioner from the consequences of his actions when damages have been imposed on so many other taxpayers in a long succession of similar ULC cases. *Rager v. Commissioner, supra,* 775 F.2d at 1083; *Larsen v. Commissioner,* 765 F.2d 939, 941 (9th Cir. 1985), affg. an order of this Court; *Burwell v. Commissioner, supra,* 89 T.C. at 597-598; *Bell v. Commissioner,* 85 T.C. 436, 442-445 (1985).[9] In fact, petitioner should be treated just as those other taxpayers who made frivolous ULC claims were treated. Accordingly, we conclude that imposition of damages is warranted here, and we award damages to the United States in the amount of $5,000.

To reflect the concessions and above holdings,

*Decision will be entered for the respondent.*

---

[9]In addition to the published opinions of this Court and the Ninth Circuit awarding or upholding damages in ULC cases, our Memorandum Opinions imposing such damages are legion: *Mulvaney v. Commissioner,* T.C. Memo. 1988-243; *Jackson v. Commissioner,* T.C. Memo. 1988-143; *Ruberto v. Commissioner,* T.C. Memo. 1987-623; *Adamson v. Commissioner,* T.C. Memo. 1986-489; *McMains v. Commissioner,* T.C. Memo. 1986-266; *Roben v. Commissioner,* T.C. Memo. 1986-48; *Grew v. Commissioner,* T.C. Memo. 1986-47; *Rutter v. Commissioner,* T.C. Memo. 1985-368; *Taylor v. Commissioner,* T.C. Memo. 1985-323; *Morgan v. Commissioner,* T.C. Memo. 1985-280; *Lufkin v. Commissioner,* T.C. Memo. 1985-225; *Dummler v. Commissioner,* T.C. Memo. 1985-224; *Witherow v. Commissioner,* T.C. Memo. 1985-223; *Uhrig v. Commissioner,* T.C. Memo. 1985-206; *Beauvais v. Commissioner,* T.C. Memo. 1985-204; *Booker v. Commissioner,* T.C. Memo. 1985-93; *Lane v. Commissioner,* T.C. Memo. 1985-89; *Rager v. Commissioner,* T.C. Memo. 1984-563, affd. 775 F.2d 1081 (9th Cir. 1985); *Lee v. Commissioner,* T.C. Memo. 1984-562; *Ruberto v. Commissioner,* T.C. Memo. 1984-557; *Moriarty v. Commissioner,* T.C. Memo. 1984-539; *Swanson v. Commissioner,* T.C. Memo. 1984-524; *Snodgrass v. Commissioner,* T.C. Memo. 1984-435; *Clark v. Commissioner,* T.C. Memo. 1984-326.