ROBERT A. HALL AND ANN S. HALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hall v. Commissioner
Docket No. 36639-87
United States Tax Court
T.C. Memo 1990-127; 1990 Tax Ct. Memo LEXIS 127; 59 T.C.M. (CCH) 80; T.C.M. (RIA) 90127; March 12, 1990
Robert M. Wechsler, for the petitioners. John Aletta, for the respondent. CLAPP
*207 MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax Year
Deficiency
sec. 6653(a) [1]
sec. 6653(a)(1)
sec. 6653(a)(2)
sec. 6661
1980
$ 10,138
$ 507
--
--
--
1981
17,340
--
$ 867 * --
1982
9,004
-- 450  * $ 2,251
1983
13,134 --  657  * 3,283
*128 Petitioners resided in Hamden, Connecticut when their petition was filed. All references to petitioner in the singular are to Robert A. Hall. After concessions by the parties, the issue remaining is the value of films donated to the National Football Foundation and Hall of Fame Inc. (Hall of Fame). FINDINGS OF FACT Some facts are stipulated and are so found. Petitioner was extensively involved in football. At various times, he was a football coach, broadcaster, writer, and lecturer. Petitioner accumulated numerous football films over the many years of his involvement with football. Petitioner also was an attorney and legal counsel to a company called Tel Ra Productions (Tel Ra). Tel Ra was founded in 1948 or 1949 by Wallace Orr. Tel Ra's primary business was filming football games or other events and then leasing such films. Its film library contained approximately 45 million feet of film, including National Football League *129 (NFL) games, college football games, mud wrestling, jello wrestling, and alligator tangling. An estimated one-third of the film was of professional football, one-third college football, and one-third nonfootball. Tel Ra's entire film library was sold for $ 300,000 in 1980. The parties allocated $ 285,000 of the purchase price to the NFL films and $ 15,000 to all other films. Almost every Sunday during the years 1946 through 1952, petitioner would visit the Tel Ra laboratories in Philadelphia, Pennsylvania. At the lab, petitioner, his good friend Wallace Orr, and an editor would view and edit films of recent football games to make a highlights show. After the highlights had been extracted, the other portions of the films would be discarded. From these rejected portions, petitioner was free to take what he wished, and he did take such film. Films made of these edited-out portions were a part of petitioner's collection. Petitioner used his film collection for various purposes. In the years 1951 through 1961, petitioner hosted several television shows on football. One of the shows was nationally broadcast, and two others were locally broadcast. Petitioner would use portions *208 *130 of his football film collection on the shows. He also provided footage on a weekly basis to a company called Bond Street Tobacco which sponsored boxing matches. The footage would be used in case of an early knockout, at which time the films would be shown to fill up extra time. Petitioner also appeared as a football raconteur at sports banquets and fundraisers. During his presentations, petitioner would show his football films. In the years 1975, 1976, 1977, and 1978, petitioner contributed college and professional football films to the Hall of Fame. In 1975, petitioner donated 5,600 feet of college and professional highlight football film covering football games played during the years 1949, 1950, and 1954. In 1976, petitioner gave 5,000 feet of film, which included 1948 college highlights, 1949 NFL highlights, 1951 college highlights, and 1951 bowl highlights. In 1977, petitioner donated 2,000 feet of football film on the 1948 All American Collier's team. During 1978, petitioner gave 2,000 feet of film depicting various college football teams. On his returns, petitioner valued these films at from $ 5 to $ 25 per foot. Respondent allowed a value of approximately 10 cents *131 per foot for the films. Petitioner's charitable contribution deductions for the films were $ 17,500 in 1977 and $ 50,000 in 1978. (Petitioner's tax returns for 1975 and 1976 were not placed in evidence.) For the years 1975 through 1978, the charitable contribution deductions taken for the donated films generated carryover amounts. Thus, the films are the basis for petitioners' charitable deduction carryovers claimed for the years 1980 through 1983. OPINION
A. Valuation of the films
Section 170(a)(1) provides that a deduction shall be allowed for charitable contributions. When property other than money is contributed to a charitable organization: the amount of the contribution is the fair market value of the property at the time of the contribution * * *. [Sec. 1.170A-1(c)(1), Income Tax Regs.] The fair market value of a charitable donation at the time of contribution is a question of fact. Morris v. Commissioner, 761 F.2d 1195, 1200 (6th Cir. 1985), affg. a Memorandum Opinion of this Court. Petitioner bears the burden of proof regarding the value of a charitable contribution. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 113 (1933). *132 Petitioner did not introduce or seek to introduce expert testimony. Petitioner maintains that there are no experts on the value of vintage football films. An attempt was made to establish the value of the donated films by a variation of the comparable sales method. Petitioner introduced a list dated September 1, 1978, containing the prices for which football films could be rented from Tel Ra. However, petitioner did not translate rental value into fair market value and failed to equate sufficiently the donated films to Tel Ra's films. Petitioner's films may have been as good as Tel Ra's films or they may not have been. When petitioner visited Tel Ra's laboratories, he would help Wallace Orr and an editor extract the highlights from a film. Petitioner was free to take whatever quantity of the edited-out film he wanted. At least some percentage of the donated films was comprised of such discarded film, but the exact percentage has not been established. There is no evidence of the other sources for petitioner's film collection. Respondent pointed out that the Tel Ra library was sold for $ 300,000 in 1980. Thus, respondent contended that even if the donated films were to be *133 equated to the Tel Ra films, the sale price of the Tel Ra films was $ 300,000 for 45 million feet, or less than one cent per foot. If we accept the parties' allocation of $ 285,000 for the NFL film alone, the value of the NFL film is approximately two cents per foot. Either of these values is below the ten cents per foot allowed by respondent. Petitioner has failed to prove that the value of the donated films exceeded the amount determined by respondent. B. Additions to tax
We now consider whether petitioner is liable for additions to tax under section 6653(a)(1) [2] for the years 1980 through 1983. This section provides that if any part of any underpayment is due to negligence or intentional disregard of rules or regulations, an additional amount equal to 5 percent of the underpayment shall be added to the tax. Sec. 6653(a)(1). Respondent's determination of negligence or intentional disregard of the rules and regulations is presumed correct and the burden of proof is on petitioners. Dew v. Commissioner, 91 T.C. 615, 625 (1988). Negligence under section 6653(a)(1) is lack of due care or failure to do what a reasonable and ordinarily prudent person *134 would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner was a lawyer and either knew or reasonably should have known that when taking a sizable charitable deduction, prudence *209 requires verification and documentation of value. Petitioner is liable for additions to tax under section 6653(a) for 1980 and section 6653(a)(1) for the years 1981 through 1983. Petitioner is also liable for the section 6653(a)(2) addition to tax for the years 1981, 1982, and 1983 in an amount equal to 50 percent of the interest payable with respect to the underpayment. We now consider whether petitioners are liable for additions to tax under section 6661 for the years 1982 and 1983. Under section 6661, if there exists a substantial understatement of the tax due, 25 percent of such understatement will be added to the tax. Sec. 6661. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. *135 6661(b)(1)(A)(i) and (ii); Pallottini v. Commissioner, 90 T.C. 498, 500-501 (1988). Whether petitioner substantially understated his income tax for 1982 and 1983 will depend upon the Rule 155 computation. Petitioner is liable for additions to tax of 25 percent of the understatement for 1982 and 1983 if such understatements are substantial within the meaning of the Code. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. * 50 percent of the interest due on the deficiency.↩
2. Prior to 1981, the 5-percent addition to tax under discussion was designated as section 6653(a). See Dew v. Commissioner, 91 T.C. 615, 616↩ (1988).