T.C. Summary Opinion 2005-148


UNITED STATES TAX COURT


GILLIS TRIPLETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19733-03S.            Filed October 12, 2005.


Gillis Triplett, pro se.

<u>John W. Sheffield III</u>, for respondent.



COUVILLION, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7463 in effect when the petition was filed.[1] The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined the following deficiencies, section 6651(a)(1) addition to tax, and section 6662(a) penalties for the 1998, 1999, 2000, and 2001 taxable years:

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
| --- | --- | --- | --- |
| 1998 | $3,716 | $100 | $743.20 |
| 1999 | 2,483 | -0- | 496.60 |
| 2000 | 2,467 | -0- | 493.40 |
| 2001 | 3,440 | -0- | 688.00 |

The issues for decision are whether petitioner is entitled to charitable contribution deductions claimed for 1998, 1999, 2000, and 2001, and whether he is liable for the section 6651(a)(1) addition to tax and the section 6662(a) penalties.

Some of the facts were stipulated. Those facts, with the exhibits annexed thereto, are so found and made part hereof. Petitioner's legal residence at the time the petition was filed was Mableton, Georgia.

During the years at issue, petitioner was employed on and off as a sales trainer for Parmalat-Atlanta Dairies. He also received unemployment compensation in the amount of $6,864 in 1999 and $1,582 in 2001. At trial, petitioner did not state the current status of his employment. When employed, petitioner worked 40 hours a week.

On May 16, 1994, petitioner incorporated Embassy Christian Center, Inc. (the Center). Petitioner was listed as the secretary, CEO, CFO, and Agent of the Center. The Center's

business address at the time of incorporation was the same as petitioner's personal home address. Petitioner opened a corporate bank account on behalf of the Center with Nationsbank and listed himself as the sole authorized signatory.[2] Petitioner also installed an additional phone line in his home in the name of "Gillis Triplett d/b/a/ Embassy Christian Center, Inc."

Petitioner filed his 1998, 1999, and 2000 Federal income tax returns untimely on April 1, 2002. He filed his 2001 Federal income tax return timely. During the years in question, petitioner reported total income and claimed deductions for charitable contributions in the following amounts:[3]

| Year | Total Income | Charitable Contributions |
|------|--------------|--------------------------|
| 1998 | $41,635 | $18,831 |
| 1999 | 33,097 | 16,549 |
| 2000 | 32,968 | 16,484 |
| 2001 | 40,593 | 20,297 |

Respondent disallowed all the claimed charitable contributions deductions due to lack of substantiation.

---

[2]Petitioner testified that the Center had a treasurer for some of the time during the years at issue who was authorized to issue checks from the account, but he offered no evidence in support of this testimony. Regardless, petitioner was authorized to write checks on behalf of the Center at all times during the years at issue.

[3]The amounts listed on the notice of deficiency sent to petitioner differ slightly from those referred to during trial and in this opinion. The true amounts, listed herein, are taken from petitioner's 1998, 1999, 2000, and 2001 Federal income tax returns. The difference in the amounts, however, is so nominal that a Rule 155 computation is unnecessary.

Deductions are a matter of legislative grace, and a taxpayer must satisfy the specific statutory requirements for the deductions he claims. Deputy v. duPont, 308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering, 290 U.S. 435 (1934). A taxpayer bears the burden of proving entitlement to deductions claimed. Rule 142 (a); Welch v. Helvering, 292 U.S. 111 (1933). These rules apply to deductions claimed for charitable contributions. See Davis v. Commissioner, 81 T.C. 806, 815 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985).

In order to claim a charitable contributions deduction, a taxpayer must establish that a gift was made to a qualified entity organized and operated exclusively for an exempt purpose, no part of the net earnings of which inures to the benefit of any private individual. Sec. 170(c)(2). Therefore, the Court must first examine whether the Center, the recipient of the bulk of petitioner's contributions,[4] was a "qualified entity" under section 170.

Qualified entities under section 170 are generally organizations that qualify for an exemption under section 501(c)(3). See, e.g., Dew v. Commissioner, 91 T.C. 615, 623

---

[4]Petitioner introduced at trial evidence that he contributed approximately $100 to various other charitable organizations. Furthermore, petitioner testified that he contributed even greater amounts to these charitable organizations during each of the years at issue. The Court is satisfied that he did not make such contributions, and, if he did, petitioner did not establish whether they were made to qualified charitable organizations.

(1988); <u>Taylor v. Commissioner</u>, T.C. Memo. 2000-17.  To qualify for exemption under section 501(c)(3), the entity must (1) be organized and operated exclusively for religious or charitable purposes, (2) have no part of its earnings inuring to the benefit of a private individual, and (3) have no substantial part of its activities consist of the dissemination of propaganda or be otherwise attempting to influence legislation.  Sec. 1.501(c)(3)-1, Income Tax Regs.  Although they are separate requirements, the "private inurement" test and the "operated exclusively for exempt purposes" test prescribed by section 501(c)(3) often substantially overlap.  <u>Church of Ethereal Joy v. Commissioner</u>, 83 T.C. 20, 21 (1984).  It is these two tests, in conjunction, that the Court addresses in deciding this case.

Petitioner claims that the Center operated exclusively for an exempt purpose, as a church, contending that the Center held regular services, received offerings, and had a clearly identifiable membership.  Despite this testimony, however, petitioner offered little evidence to substantiate his claim.  There is no evidence that petitioner, as its pastor, performed marriages, burials, baptisms, or other sacerdotal functions, and, while petitioner did obtain an associate's degree from West Angeles Church in California, he is not a licensed or ordained minister.  Furthermore, although petitioner testified the Center kept books and records documenting the offerings it received and

listing its members, he failed to produce such evidence at trial.[5]

Petitioner appeared as a motivational speaker at various functions throughout Georgia and introduced into evidence several letters thanking him for his service. In addition, petitioner sent tape recordings of his "sermons" to several organizations and also introduced into evidence several letters thanking him for the tapes. The letters addressed petitioner as "Reverend" or "Pastor" but made no mention of the church petitioner maintains he represents. Petitioner failed to substantiate, either to respondent or to this Court, the relationship of his speaking ministry to the Center. However, were the Court to assume, arguendo, that the Center operated for an exempt purpose, the test is not merely that an organization have an exempt purpose, but that it must operate "exclusively" for that exempt purpose.

The definition of "exclusively", under section 501(c)(3) does not mean solely or absolutely without exception. Church in Boston v. Commissioner, 71 T.C. 102 (1978). The Supreme Court, however, has ruled the term has a fairly narrow definition.

---

[5]When asked for a membership list, petitioner introduced into evidence a flier advertising "Mastering Manhood Seminars and Conferences". The flier listed 10 men, including petitioner, who were available to speak for seminars and workshops on various motivational topics. Petitioner did not testify that the listed men were members of the Center, nor did he explain why he considered the flier an accurate membership list; therefore, the Court declines to give much weight to this evidence.

Better Bus. Bureau v. United States, 326 U.S. 279 (1945). In Better Bus. Bureau, the Supreme Court stated: "the presence of a single * * * [nonexempt] purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly * * * [exempt] purposes". Better Bus. Bureau v. United States, supra at 283. Therefore, even if the Court were satisfied that the Center had an exempt purpose, the existence of a substantial nonexempt purpose, furthered by the organization's activities, would preclude it from qualifying under section 501(c)(3). Church of World Peace, Inc. v. Commissioner, T.C. Memo. 1994-87.

Petitioner testified extensively about the book publishing activities of the Center, contending that the publishing and distribution of literature was a significant aspect of the Center's activities. The Center paid for the publishing of such titles as "Why People Choose the Wrong Mate", "Beware of the Spirit of Religion", and "How to Make the Devil Obey You". Petitioner authored each of the books and pamphlets that the Center published. Although the books had a religious theme, writing and publishing books is not a religious activity unless petitioner can prove the primary purpose for publishing the books was not for profit but for the furtherance of a nonexempt purpose. The Inc. Trs. of the Gospel Worker Socy. v. United States, 510 F.Supp. 374 (D.C.D.C. 1981); Pulpit Res. v.

Commissioner, 70 T.C. 594 (1978).  Petitioner testified that the Center distributed the books at cost; however, he introduced no evidence in support of this statement.  Absent introduction of any financial statements from the Center whatsoever, the Court cannot evaluate whether the Center did not in fact profit from the publishing and distribution of books.  Therefore, the Court finds that the publishing and distributing of books by the Center was a substantial nonexempt activity.

The existence of this substantial nonexempt purpose precludes the Center from qualifying as an exempt organization under section 501(c)(3).  In addition, the nature of this nonexempt activity, publishing books, was conducted for the exclusive benefit of petitioner, not the public.  As noted above, petitioner authored each of the books the Center published.  He then paid all publishing costs from his personal bank account and deducted the costs as a charitable deduction on his Federal income tax returns.  Respondent argues that petitioner essentially incorporated the Center to enable the publishing of books he authored.  Respondent's argument is well founded.  As previously noted, petitioner's testimony was that a substantial percentage of his earnings went to the Center; yet, his was the sole authorized signature of this account.  No evidence was offered to establish that the Center had members or received contributions from others.  The Center did not maintain any books

and records.  In effect, petitioner was using a claimed church as his pocket book.  Therefore, the Court agrees with respondent, and the Center also fails the "private inurement" test of section 501(c)(3).  Because petitioner's contributions were to a nonexempt organization, they are not deductible on his Federal income tax return.[6]  Therefore, respondent is sustained on this issue.

Respondent determined section 6662(a) penalties in the amounts of $743.20, $496.60, $439.40, and $688.00 for the years 1998, 1999, 2000, and 2001, respectively.  Section 6662 provides for a 20-percent penalty for any underpayment to which the section applies.  Sec. 6662(a).  Respondent determined that section 6662(a) applied because petitioner was negligent or disregarded rules or regulations.  Sec. 6662(b)(1).

Negligence is defined as "any failure to make a reasonable attempt to comply with the provisions of this title".  Disregard includes "careless, reckless, or intentional disregard".  Sec. 6662(c).  The entirety of petitioner's deductions for the years

---

[6]Only a fraction of the amounts claimed as charitable contributions on petitioner's Federal income tax returns were in the form of cash donations.  The bulk of the deductions were for payments petitioner made out of his personal bank account "on behalf" of the Center, such as rent, natural gas and electricity for petitioner's personal residence, religious books, and office supplies.  Because the Court has denied the deduction of contributions to the Center by petitioner, it is not necessary to discuss the eligibility of the nature of petitioner's contributions.

at issue was disallowed.  Petitioner presented very little evidence as to how he arrived at the amounts for most of the contributions claimed on his returns.  In addition, the majority of petitioner's claimed charitable deductions were for personal expenses.  The Court holds that petitioner disregarded rules and regulations and sustains the section 6662(a) penalties for the years at issue.

Respondent also determined a section 6651(a)(1) addition to tax for the year 1998 in the amount of $100.  A taxpayer is liable for an addition to tax for failure to file a return timely unless such failure "is due to reasonable cause and not due to willful neglect."  Sec. 6651(a)(1).  Willful neglect is defined as "a conscious, intentional failure, or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985).  Petitioner was required to file a timely Federal income tax return for 1998. Sec. 6012.

Petitioner filed his 1998 Federal income tax return untimely, on April 1, 2002.[7]  Due to the lack of testimony or other evidence explaining why he waited almost 3 years to file his 1998 tax return, the Court holds that petitioner is liable for the section 6651(a)(1) addition to tax for 2000.

---

[7]Petitioner also filed his 1999 and 2000 Federal income tax return untimely; however, respondent did not determine the sec. 6651(a)(1) addition to tax for those years.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent.</u>