T.C. Summary Opinion 2010-36

UNITED STATES TAX COURT

LEE EDWARD ELVERSON AND MARIE ELVERSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13511-08S.           Filed March 29, 2010.

Lee Edward Elverson and Marie Elverson, pro sese.

<u>John R. Gilbert</u>, for respondent.

NIMS, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, all section references are to the Internal

Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

By separate notices of deficiency, respondent determined deficiencies in the Federal income taxes of Lee Edward Elverson (petitioner), additions to tax, and penalties as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|------------|--------------------------------|----------------------|
| 2002 | $4,167 | $742.34 | -- |
| 2004 | 6,663 | 1,031.75 | $1,332.60 |
| 2005 | 6,537 | -- | 1,307.40 |
| 2006 | 4,013 | -- | -- |

After concessions, the issues remaining for decision are: (1) Whether petitioner is entitled to deductions in connection with his purported accounting business for 2002, 2004, 2005, and 2006 beyond those conceded by respondent; (2) whether petitioner is entitled to miscellaneous itemized deductions for 2002, 2004, 2005, and 2006 in excess of the amounts conceded by respondent; (3) whether petitioner is entitled to charitable contribution deductions for 2005 and 2006; (4) whether petitioner is entitled to a dependency exemption deduction for 2002; (5) whether petitioner is liable for section 6651(a)(1) additions to tax for 2002 and 2004; and (6) whether petitioner is liable for section 6662(a) accuracy-related penalties for 2004 and 2005.

For purposes of order and clarity, after a brief general background, each of the issues submitted for consideration is set forth below with separate background and discussion.

## General Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner resided in Pennsylvania at the time the petition was filed.

Petitioner filed individual Forms 1040, U.S. Individual Income Tax Return, for his 2002 and 2004 tax years, and petitioner and Mrs. Elverson filed joint Forms 1040 for their 2005 and 2006 tax years.

On February 29, 2008, respondent issued a notice of deficiency to petitioner for his 2002 and 2004 tax years. On March 3, 2008, respondent issued a notice of deficiency to petitioner and Mrs. Elverson for their 2005 and 2006 tax years.

On June 3, 2008, petitioner and Mrs. Elverson filed a petition with the Court in response to the notices of deficiency. Petitioner and Mrs. Elverson separated before trial, however, and Mrs. Elverson did not execute the stipulation of facts and did not appear at trial on April 21, 2009. Consequently, respondent filed, and the Court granted, a motion to dismiss for lack of prosecution with regard to Mrs. Elverson. The decision, when entered, will be in the same amount as ultimately determined against petitioner.

Issue 1.  Business Expense Deductions

Background

During the years at issue petitioner purportedly operated an accounting business.  The accounting activity consisted of teaching clients how to prepare tax returns and performing litigation support services for his friend, Terry Ann Stemple.

On the Schedules C, Profit or Loss From Business, accompanying his returns, petitioner reported gross business income of $1,735 in 2002, $775 in 2004, $575 in 2005, and $761 in 2006.  Petitioner also claimed business expense deductions totaling $14,659.34 in 2002, $14,602 in 2004, $11,198 in 2005, and $10,316 in 2006.

Respondent disallowed petitioner's claimed business expense deductions in the following amounts (all figures are rounded).

| Expense | 2002 | 2004 | 2005 | 2006 |
|---------|------|------|------|------|
| Rent | $2,400 | $3,570 | -- | -- |
| Utilities | -- | -- | $2,048 | $2,058 |
| Postage | 1,515 | 1,618 | -- | 420 |
| Computer hardware | 122 | 2,691 | 1,548 | -- |
| Computer software | 1,487 | 1,149 | 1,507 | 1,990 |
| Computer support | -- | -- | -- | 904 |
| Periodicals | 475 | 579 | -- | 435 |

Petitioner has conceded that he is not entitled to the deductions for the periodical expenses.  Respondent has conceded computer expenses of $59.80 in 2005 and $104.05 in 2006.

## Discussion

Deductions are a matter of legislative grace, and taxpayers bear the burden of establishing entitlement to any claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers must maintain records sufficient to allow the Commissioner to determine their correct tax liability. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Additionally, taxpayers bear the burden of substantiating the amount and purpose of each item they claim as a deduction. Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Section 162(a) allows a taxpayer to deduct all ordinary and necessary business expenses paid or incurred during the taxable year. In order for a taxpayer to be in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and with the primary purpose of realizing a profit. Commissioner v. Groetzinger, 480 U.S. 23 (1987).

Petitioner is not entitled to the deductions claimed on his Schedules C because he was not engaged in a trade or business. The objective facts indicate that petitioner's primary purpose was not to realize a profit. Petitioner acknowledged that relatively few of his clients ever paid, yet his expenses consistently exceeded his revenues by a sizable margin. In fact, petitioner admitted that his "business" had been profitable for

only 1 of its 10 years of operation. Furthermore, petitioner's own testimony reveals that he subjectively did not intend to operate his "business" for profit. Petitioner testified that despite the difficulties in collecting from his clients, he continued his activity "both as a service to the public and * * * as a contribution to the community".

Assuming petitioner's activity did constitute a trade or business, he would nevertheless not be entitled to his claimed deductions for the following reasons.

A. Rent

Petitioner claims he rented office space and storage space from his former employer, Nicholas Itri, at the rate of $100 per month each ($200 per month total). Petitioner claims he used the office and storage spaces to meet with clients and store their tax records, respectively. Petitioner claims he later moved the tax records to storage facilities operated by Huber's Mini-Storage and Pier 40 in 2004.

Petitioner could not, however, substantiate a large portion of his claimed rent expenses. He provided canceled checks and bank statements which document payments of only $1,000 to Mr. Itri in 2002, $500 to Mr. Itri in 2004, $341 to Huber's Mini-Storage in 2004, and $747.59 to Pier 40 in 2004.

Petitioner accounts for the discrepancy by claiming that he occasionally paid Mr. Itri in cash. We do not find petitioner's

claims credible because they are refuted by Mr. Itri's testimony. Mr. Itri testified that he charged petitioner $100 per month for rental of storage space only and denied charging rent for the use of the office space. Mr. Itri also denied accepting any cash payments from petitioner.

We also reject petitioner's claim regarding the business purpose of the rent expenses. Petitioner insists he used the storage space to store tax records only. However, Mr. Itri testified that petitioner used approximately 75 percent of the storage space to store personal items, such as clothes, furniture, and appliances. Though Mr. Itri did observe boxes in the remainder of the storage space, he could not determine whether or not they contained tax records. Furthermore, petitioner claimed he subsequently moved these tax records to Huber's Mini-Storage, but the checks used to pay for that rent prove this claim also to be false. The checks were marked "FOR MARIELLEN NICE" and thus indicate the payments were for her personal storage space.

B. Utilities

Petitioner claimed utilities expenses of $2,048 in 2005 and $2,058 in 2006.

As substantiation of his expenses, petitioner submitted to respondent hand-prepared ledgers which he claimed were contemporaneous records of his expenses. The 2005 ledger

contained entries for "utilities" which totaled $1,761.50. The 2005 ledger also indicated that petitioner spent $286.80 for Internet service.

Petitioner did not establish the amount of business use of his Internet service because he failed to explain how the Internet service was used in his business. Petitioner also could not adequately explain the "utilities" entries in the 2005 ledger. He provided only bank statements on which he had designated cash withdrawals from automated teller machines (ATMs) as "utilities". He could not, however, identify what utilities he paid for and to whom those payments were made.

Petitioner claims he had a subledger which recorded this information and to which were attached receipts from the payees. Petitioner claims the subledger is unavailable because Mrs. Elverson disappeared with it. Petitioner alleges that respondent failed to assist him in locating Mrs. Elverson and thus blames respondent for his inability to produce the subledger.

We need not assess the credibility of petitioner's claims regarding the subledger because he has nonetheless failed to satisfy his burden of proof. Even if petitioner did have a subledger which adequately substantiates his 2005 utilities expenses, the responsibility of locating Mrs. Elverson and producing that subledger belongs to him. Respondent has no duty

to find her on petitioner's behalf, and any alleged uncooperativeness by respondent does not relieve petitioner of his burden of proof.

Petitioner did not submit a ledger for his 2006 expenses, but he designated $1,347.97 in payments made to Verizon Wireless as utilities expenses on his bank statements.

Section 274(d) imposes strict substantiation requirements for travel, entertainment, gift, and "listed property" expenses. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Cellular telephones (cell phones) are included in the definition of "listed property". Sec. 280F(d)(4)(A)(v).

Under section 274(d), the taxpayer generally must substantiate either by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (A) The amount of the expense; (B) the time and place the expense was incurred; (C) the business purpose of the expense; and (D) in the case of an entertainment or gift expense, the business relationship to the taxpayer of each expense incurred. For "listed property" expenses, the taxpayer must establish the amount of business use and the amount of total use for such property. See sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the expenditure and documentary evidence (e.g., receipts or bills) of certain expenditures. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Substantiation by other sufficient evidence requires the production of corroborative evidence in support of the taxpayer's statement specifically detailing the required elements. Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

Petitioner had three lines on his Verizon Wireless account. Petitioner did not present any record or evidence of the business and total usage of each line because he claimed the cell phones were used entirely for business purposes. Although two of the lines were used exclusively for personal calls between petitioner and his wife (personal lines), petitioner nevertheless maintains that his cell phone expenses were purely business expenses because those calls were purportedly free under the family plan to which he had subscribed.

Petitioner's cell phone statements reveal his claims to be false. The statements show that a significant number of minutes were in fact billed to the personal lines, and therefore, not all of the calls placed on those lines were free. The statements

also show charges for data usage and text messaging. Furthermore, even if the personal lines had been used as petitioner claimed, they still would not have been free because petitioner was required to pay a monthly service fee for each line regardless of usage.

Petitioner did not present any evidence that would enable us to identify which calls were made for business purposes. Because petitioner has not established the amount of business use of the cell phones, he has failed to adequately substantiate his cell phone expenses under section 274(d).

C. Postage

Petitioner claimed postage expenses of $1,515 in 2002 and $1,618 in 2004.

Petitioner failed to prove that he spent these amounts. Petitioner's own ledger indicates he spent only $122.71 on postage in 2002. The discrepancy is attributable to petitioner's omission from the ledger of a $1,393 check payable to himself. Petitioner claims the proceeds of this check were used to pay for postage. However, the memo section of the check is marked as "Transfer to PB" and thus indicates the check was used merely to transfer funds to petitioner's account at Premier Bank.

Similarly, petitioner's 2004 ledger reported only $423.05 of postage expenses. In addition, three of the entries in the ledger reflect ATM withdrawals totaling $66. As with his

utilities expenses, petitioner claims he had a subledger which proved the cash was used for postage expenses. Petitioner claims Mrs. Elverson took this subledger as well. As discussed supra, petitioner's explanation for the absence of corroborating evidence does not excuse his failure to meet his burden of proof.

Petitioner also failed to establish that the amounts he did spend on postage were business, rather than personal, expenses. Petitioner claimed that a significant portion of his postage expenses was for express mail in connection with the litigation support services he performed for Ms. Stemple. We do not find this claim credible. Petitioner initially testified that documents "often had to go to her attorney as express mail." When pressed by respondent, however, petitioner could not recall the attorney's name. Petitioner then declared that most of the express mail was sent directly to Ms. Stemple, who would have then presumably passed the documents on to her attorney. We find petitioner's explanation unconvincing. If the documents were so urgently needed as to require express mail service, we question why petitioner would have sent them to Ms. Stemple rather than directly to her attorney.

Petitioner also claimed that he incurred postage expenses for billing letters sent to his clients. Petitioner, however, could not produce any copies of these letters (discussed infra). Furthermore, even if we did find petitioner's claim credible, we

would be unable to estimate these expenses under <u>Cohan v.</u> <u>Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930), because petitioner has not presented sufficient evidence to establish a rational basis for an estimate. See <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 743 (1985). Although petitioner claimed that he typically sent three or four billing letters to each client, he did not give any indication as to the number of clients he had. Without that information, there is no basis for an estimate.

D. <u>Computer Expenses (Hardware, Software, and Support)</u>

Computers are considered "listed property" subject to the strict substantiation requirements of section 274(d). Sec. 280F(d)(4)(A)(iv).

Petitioner failed to prove that he spent the amounts claimed as computer expenses. Petitioner did not present any evidence regarding his claimed computer support expenses. In his ledgers and bank statements petitioner identified purchases from various stores, ATM withdrawals, and checks paid to cash as computer hardware and software expenses. However, petitioner did not present any documentary evidence to corroborate his claim that computer hardware and software were purchased at these stores or with the cash from the ATM withdrawals and checks.

Petitioner again claims he had a subledger which provided such corroboration and which disappeared with Mrs. Elverson. As

discussed supra, petitioner's reason for the absence of corroborating evidence does not discharge his burden of proof.

In fact, the record contradicts petitioner's claims regarding the total amount of his computer software purchases. Petitioner identified two checks paid to cash as purchases of professional tax software from Mr. Itri in 2002.  However, Mr. Itri testified that he let petitioner use the professional tax software at his office for free and firmly denied selling any such software to petitioner.  These purported purchases also do not appear in petitioner's 2002 ledger.

Assuming that petitioner did purchase the professional tax software, we also question the necessity of that expense. Petitioner claims he needed the software to gain access to the New Jersey, Maryland, and Delaware State tax codes.  However, the tax laws of these States were freely available in 2002 through the official Web sites of the State of Delaware, New Jersey State Legislature, and Maryland General Assembly, respectively.[1] Petitioner paid for monthly Internet service and thus would have been able to access these sites on his computer.  Therefore, since petitioner already had access to the State tax laws, the purchase of the professional tax software was redundant and unnecessary.

---

[1]See http://www.delaware.gov; http://www.njleg.state.nj.us; http://mlis.state.md.us.  Archived copies of the sites are available through the Internet Archive at http://www.archive.org.

In addition, petitioner claims to have purchased the professional tax software in May and July, after tax season. Nevertheless, petitioner insists the software was necessary because he advised clients throughout the year. However, even if petitioner did need the software to assist clients in preparing delinquent returns, petitioner has not demonstrated that the purchase was necessary. Mr. Itri testified that the software was essentially worthless after tax season and that he would have given the software to petitioner.

Furthermore, if petitioner really did need professional tax software to competently advise his clients in 2002, we presume that he would have needed to purchase updated versions of the software to do so in subsequent years. He did not. In fact, petitioner purchased an off-the-shelf program, Turbotax, in 2006 for only $74.15. If off-the-shelf software was adequate for petitioner's "business" in 2006, we see no reason why considerably more expensive professional tax software was necessary in 2002.

Petitioner also failed to establish any business use of his computer in his accounting business. Petitioner testified that he did not use a computer in performing litigation support work for Ms. Stemple. Petitioner also presented no evidence that he

used his own computer when teaching clients how to prepare their tax returns. In fact, he testified that he often met his clients in one of the conference rooms at Mr. Itri's office. Petitioner's only arguable use of his own computer was to draft billing letters to his accounting clients and correspondence to Ms. Stemple's attorney. When asked by respondent to produce copies of these documents, however, petitioner could not do so. Petitioner claimed the documents were no longer available because his computer files were corrupted in 2003. We do not find petitioner's claims credible, and his story does not account for his inability to produce any correspondence prepared in 2004, 2005, and 2006.

Issue 2. Miscellaneous Itemized Deductions

Background

During the years at issue petitioner was also employed as a registered nurse. On his Schedules A, Itemized Deductions, petitioner claimed job expense deductions for 2002, 2004, 2005, and 2006.

Respondent disallowed petitioner's claimed deductions in the following amounts (all figures are rounded).

| Expense | 2002 | 2004 | 2005 | 2006 |
|---|---|---|---|---|
| Vehicle expenses | $6,918 | $10,769 | $12,004 | $9,807 |
| Parking & tolls | 554 | 540 | 983 | 880 |
| Uniforms | -- | 3,566 | 2,043 | -- |
| Nursing tools and supplies | -- | 3,416 | 1,770 | 1,526 |
| Subscriptions | -- | 515 | 675 | -- |

| | | | | |
|---|---|---|---|---|
| Job search expenses | -- | 1,565 | 2,779 | -- |
| Professional dues | -- | 230 | 550 | -- |
| Other expenses | -- | 9,560 | -- | 500 |
| Meals & entertainment | 417 | 374 | 639 | 699 |
| Nursing licenses | -- | 107 | 122 | 115 |
| Nursing insurance | -- | 89 | 89 | 97 |

Petitioner has conceded that he is not entitled to meals and entertainment expenses for the years in issue. Respondent has conceded that petitioner is entitled to deduct his expenses for nursing licenses and nursing insurance. Respondent also conceded parking and tolls expenses of $50 for each of the years in issue and vehicle expenses of $424, $224, $516, and $71 for 2002, 2004, 2005, and 2006, respectively.

### Discussion

#### A. Vehicle Expenses

The cost of transportation from one business location to another is deductible as an ordinary and necessary business expense under section 162. Steinhort v. Commissioner, 335 F.2d 496, 503-504 (5th Cir. 1964), affg. and remanding T.C. Memo. 1962-233; Heuer v. Commissioner, 32 T.C. 947, 953 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960). However, the cost of commuting between one's work and one's residence is a nondeductible personal expense. See sec. 262; Fausner v. Commissioner, 413 U.S. 838, 839 (1973); Commissioner v. Flowers, 326 U.S. 465, 473 (1946); sec. 1.162-2(e), Income Tax Regs.

Vehicle expenses are subject to the substantiation requirements of section 274(d) because vehicles are listed property under section 280F(d)(4)(A)(i).

During the years in issue petitioner claimed vehicle expense deductions of $6,917.50, $10,769, $12,004, and $9,807, respectively. These deductions consisted of claimed vehicle expenses of $7,077.45, $11,133, $12,415, and $11,096 times business-use percentages of 97.74 percent, 96.73 percent, 96.69 percent (average of two vehicles), and 88.39 percent, respectively.

Respondent conceded vehicle expense deductions of only $424, $224, $516, and $71, respectively. Respondent's figures consisted of conceded expenses of $4,928, $6,135, $6,779, and $4,589 times conceded business-use percentages of 8.6 percent, 3.7 percent, 7.6 percent, and 1.5 percent, respectively.

Petitioner has not proven that he incurred the amount of vehicle expenses claimed on his returns. Petitioner's bank statements show that he spent far less than these amounts and less than the amounts conceded by respondent. In addition, the transactions petitioner designated as vehicle expenses include ATM withdrawals and purchases from Turkish Delight and Target. Petitioner has not produced any receipts or other reliable evidence to corroborate his claims that these transactions were, in fact, vehicle expenses.

Petitioner has also failed to prove the business-use percentages claimed on his returns. Petitioner attempted to transmute his nondeductible commuting expenses into deductible transportation expenses by claiming minimal commuting mileage during the years in issue. Petitioner claims he stopped by a residence (Yardley Commons), where he purportedly performed the litigation support work for Ms. Stemple, on the way to and from work every day. Petitioner therefore contends that vehicle expenses attributable to the trips between Yardley Commons and the hospitals at which he worked were deductible business expenses. We do not find petitioner's claims credible since his own travel logs make no mention of these daily stops at Yardley Commons.

Accordingly, we hold that petitioner is not entitled to vehicle expense deductions beyond those conceded by respondent.

B. <u>Parking and Tolls</u>

Although petitioner's bank statements evidence some payments to EZ Pass in 2004, 2005, and 2006, petitioner did not present evidence that any tolls were incurred during business travel. Accordingly, we hold that petitioner is not entitled to deduct parking and tolls expenses in excess of the amounts conceded by respondent.

C. <u>Uniforms</u>

Petitioner claimed uniforms expenses for the purchase of scrub shirts and white pants.

Section 262 expressly disallows deductions for personal, living, or family expenses. It is well settled that clothing suitable for general or personal wear does not qualify as a business expense under section 162. <u>Kennedy v. Commissioner</u>, 451 F.2d 1023 (3d Cir. 1971), affg. T.C. Memo. 1970-58; <u>Yeomans v. Commissioner</u>, 30 T.C. 757, 767 (1958).

Petitioner is not entitled to deduct the cost of the pants because they are suitable for general or personal wear. Petitioner's contention that white pants are otherwise suitable only for golf is groundless and irrelevant.

Petitioner is also not entitled to deduct the cost of the scrubs because he has not specified the amounts of these purchases. We cannot estimate these amounts under <u>Cohan v. Commissioner</u>, 39 F.2d 540 (2d Cir. 1930), because petitioner has not provided a rational basis for such an estimate. See <u>Vanicek v. Commissioner</u>, 85 T.C. at 743. Petitioner presented no evidence as to the cost of a scrub shirt and the number of scrubs he typically purchased in a given year.

Accordingly, we hold that petitioner is not entitled to deduct uniforms expenses for 2004 and 2005.

D.   Nursing Tools and Supplies

In his ledgers and bank statements petitioner designated purchases at various stores and payments to Verizon Wireless (in 2004 and 2005) as nursing tools and supplies expenses.

Petitioner did not provide any evidence to corroborate his claim that nursing tools and supplies were purchased at these stores.  As discussed supra, petitioner also failed to adequately substantiate his cell phone expenses under section 274(d).

Accordingly, we hold that petitioner is not entitled to deduct nursing tools and supplies expenses for 2004, 2005, and 2006.

E.   Subscriptions

Petitioner did not present any evidence regarding his subscriptions expenses.  Accordingly, we hold that petitioner is not entitled to deduct subscriptions expenses for 2004 and 2005.

F.   Job Search Expenses

Petitioner did not present any evidence regarding his job search expenses.  Accordingly, we hold that petitioner is not entitled to deduct job search expenses for 2004 and 2005.

G.   Professional Dues

Petitioner did not present any evidence regarding his professional dues expenses.  Accordingly, we hold that petitioner is not entitled to deduct professional dues expenses for 2004 and 2005.

## H.  Other Expenses

Petitioner did not present any evidence regarding his "other" business expenses in 2004 and 2006.  Accordingly, we hold that petitioner is not entitled to deduct these amounts.

## Issue 3.  Charitable Contribution Deductions

### Background

Petitioner claimed cash charitable contribution deductions of $9,693 in 2005 and $8,362 in 2006.  Respondent disallowed both of these amounts for lack of substantiation.

### Discussion

Section 170(a)(1) allows as a deduction any charitable contribution verified under regulations prescribed by the Secretary.  A "charitable contribution" is a contribution to or for the use of a corporation, trust, or community chest, fund, or foundation which is organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, provided that none of the net earnings inure to the benefit of any private individual.  See sec. 170(c)(2); see also sec. 501(c)(3).  The entities described in section 170(c)(2) are essentially those organizations which qualify for an exemption from tax under section 501(c)(3).  See Dew v. Commissioner, 91 T.C. 615, 623 (1988); Graboske v. Commissioner, T.C. Memo. 1987-262.

For each contribution, the regulations generally require a taxpayer to maintain a canceled check, a receipt from the donee, or another reliable written record. Sec. 1.170A-13(a)(1), Income Tax Regs. Additionally, any charitable contribution of $250 or more must be further substantiated by "a contemporaneous written acknowledgment of the contribution by the donee organization". Sec. 170(f)(8)(A).

We do not find the amounts petitioner claimed as cash charitable contributions to be accurate. Petitioner's bank statements contradict the amounts claimed and indicate he made cash contributions of $5,449.93 and $14,982.24, respectively. The amounts designated as charitable contributions on the statements are themselves questionable, however, because they include purchases from Wawa and Tobacco Express, ATM withdrawals, and checks paid to cash.

Petitioner did not present any evidence to corroborate his claim that the cash from the ATM withdrawals and checks was donated to charities and could not identify any of the purported donees. Petitioner claims he is unable to do so because Mrs. Elverson took the subledger and receipts which contained that information. As discussed supra, petitioner's tale regarding the disappearance of his records does not free him from his burden of proof.

Furthermore, petitioner failed to satisfy the requirements of section 170(f)(8)(A) for some of the purported donations. All of the checks and one of the ATM withdrawals were in the amount of $250 or more, and petitioner did not provide contemporaneous written acknowledgments for the corresponding donations.

Petitioner's bank statements do show that he made donations of $105 to WXPN in 2005, $40 to WXPN in 2006, $40 to Disabled American Veterans in 2006, $25 to National Wildlife Federation in 2006, $20 to St. Labre Indian School in 2006, and $20 to American Legion in 2006. However, petitioner did not present any evidence that these donees were organized and operated exclusively for tax-exempt purposes at the time of the donations.

Accordingly, we hold that petitioner is not entitled to his claimed charitable contribution deductions for 2005 and 2006.

Issue 4. Dependency Exemption Deduction

### Background

Petitioner claimed a $3,000 dependency exemption deduction for his daughter on his 2002 return. In 2002 petitioner's daughter was 22 years old and reported $16,359 of gross income. Respondent determined that she did not qualify as petitioner's dependent and therefore disallowed the deduction.

### Discussion

A taxpayer is entitled to a dependency exemption deduction for each dependent (A) whose gross income is less than the

exemption amount or (B) who is a child of the taxpayer and is a student under 24 years of age at the end of the year in question. Sec. 151(c)(1).

To qualify as a dependent, an individual must have received over half of his or her support for the taxable year from the taxpayer. Sec. 152(a). A taxpayer cannot prove that he provided more than half the support of a claimed dependent without establishing the total amount of support costs. Archer v. Commissioner, 73 T.C. 963, 967 (1980); Blanco v. Commissioner, 56 T.C. 512, 514-515 (1971); Cotton v. Commissioner, T.C. Memo. 2000-333.

Petitioner has not met the requirements for the dependency exemption deduction. His daughter's gross income exceeded the $3,000 exemption amount for 2002. See sec. 151(d)(1), (4); Rev. Proc. 2001-59, sec. 3.11, 2001-2 C.B. 623, 626. Though she was under 24, there is no evidence that she was a student.

Furthermore, petitioner's daughter did not qualify as a dependent. No evidence was presented as to the total amount of her support costs in 2002. Thus, petitioner did not prove that he provided more than half of her support for that year.

Accordingly, we hold that petitioner is not entitled to a dependency exemption deduction for 2002.

Issue 5.  Section 6651(a)(1) Additions to Tax

### Background

Petitioner filed a return for his 2002 tax year on June 1, 2006.  Petitioner filed his 2004 return on April 19, 2006.

### Discussion

Section 6651(a)(1) provides for an addition to tax of up to 25 percent for failure to timely file a return unless such failure was due to reasonable cause and not willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985); Baldwin v. Commissioner, 84 T.C. 859, 870 (1985).  The Commissioner bears the burden of production with respect to additions to tax and penalties, but the taxpayer retains the burden of proving the Commissioner's determination is in error.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Petitioner admits that his 2004 return was filed late.  As to his 2002 return, however, petitioner claims he timely filed an earlier return which was lost in the mail or misplaced by respondent.

Petitioner presented no evidence to support this claim.  We are not required to accept petitioner's self-serving and uncorroborated testimony.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Accordingly, we hold that petitioner is liable for section 6651(a)(1) additions to tax for 2002 and 2004.

Issue 6.  Section 6662(a) Penalties

## Background

Petitioner reported tax liabilities of $6,318 and $4,824 on his 2004 and 2005 returns, respectively.  In the notices of deficiency respondent determined that petitioner's correct tax liabilities were $12,981 and $11,361, respectively.

## Discussion

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty of 20 percent on the portion of an underpayment attributable to negligence, disregard of rules or regulations, or a substantial understatement of income tax.  Negligence includes any failure to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  An understatement is substantial if it exceeds the greater of:  (1) 10 percent of the tax required to be shown on the return for the taxable year, or (2) $5,000.  Sec. 6662(d)(1)(A).

Petitioner was negligent because he failed to adequately substantiate his claimed deductions.  Petitioner also substantially understated his income tax in 2004 and 2005.  On the basis of the figures in the notice of deficiency, respondent calculated petitioner's understatement of his 2004 tax liability as $6,663 and the amount of tax required to be shown on the 2004 return as $12,981.  For 2005 respondent calculated the understatement as $6,537 and the amount of tax required to be

shown on the return as $11,361. As calculated by respondent, the understatements exceed the greater of $5,000 or 10 percent of the tax required for that year. Although those calculations do not account for respondent's concessions, these items will produce only minor adjustments in respondent's figures, and substantial understatements of income tax would remain.

Section 6664(c)(1) provides a defense to the section 6662 penalty for any portion of an underpayment where the taxpayer establishes reasonable cause existed and that he acted in good faith. See Higbee v. Commissioner, supra at 448.

Petitioner claims that he had records which adequately substantiated his deductions. Petitioner claims he was unable to produce these records because Mrs. Elverson disappeared with them before trial. As discussed throughout this opinion, we doubt petitioner's credibility and do not find his claims regarding the existence of these records to be believable.

Accordingly, we hold that petitioner is liable for section 6662(a) accuracy-related penalties for 2004 and 2005.

To reflect the foregoing,

Decision will be entered

under Rule 155.